IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN MICHAEL GARZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-2730-N-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff John Michael Garza seeks judicial review of a final adverse decision of

the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons

explained below, the hearing decision should be reversed and this case remanded to the

Commissioner for further proceedings consistent with this recommendation.

**Background**

Plaintiff alleges that he is disabled due to a variety of ailments. *See*

Administrative Record [Dkt. Nos. 8 & 9] ("Tr.") at 19. After his applications for

disability insurance benefits and supplemental security income ("SSI") benefits were

denied initially and on reconsideration, Plaintiff requested a hearing before an

administrative law judge ("ALJ"), which was held on March 8, 2013. *See id.* at 17. At

the time of the hearing, Plaintiff was 37 years old. *See id.* at 39. He is a high school

graduate, attended college for approximately one year, and has past work experience

as an assistant manager in a restaurant bar. *See id.* Plaintiff has not engaged in

substantial gainful activity since July 9, 2011. *See id.* at 19.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. *See id.* at 29. Although the medical evidence established that Plaintiff suffered from multiple impairments found to be severe – including chronic bilateral knee and low back pain, obesity, hypertension, pancreatitis, bipolar disorder, anxiety, and depression, *see id.* at 19 – the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations, *see id.* at 20-22. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of light work, but could not return to his past relevant employment. *See id.* at 22-29. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as an assembler, inspector, or hand packer – jobs that exist in significant numbers in the national economy. *See id.* at 28-29.

Plaintiff appealed that decision to the Appeals Council, and the Council affirmed. *See id.* at 1-13. Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on three grounds, which are outlined in the analysis below. And the undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole

and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v.*

-3-

*Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability

-4-

without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial

evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

In this case, Plaintiff presents three grounds to show either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner applied improper legal standards to evaluate the evidence: (1) the ALJ

failed to properly weigh the medical opinion evidence; (2) the ALJ failed to properly evaluate Plaintiff's credibility; and (3) the ALJ relief on flawed vocational expert testimony.

For the reasons explained below, reversal is required on Plaintiff's first ground. Therefore, the undersigned does not consider Plaintiff's remaining issues for review, because, on remand, the ALJ's correct consideration of the weight to be given to Plaintiff's treating psychiatrist's opinions may likely affect the remaining issues.[1]

To begin, as to Plaintiff's acknowledged severe mental impairments, the ALJ considered several opinions from Plaintiff's treating psychiatrist, Arunachalam Thiruvengadam, M.D., the sole treating or examining opinions relevant to Plaintiff's mental health. *See* Tr. at 26. The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez*, 64 F.3d at 175-76 (citing 20 C.F.R. § 404.1527(c)(2)). And "[t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton v. Apfel*, 209 F.3d 448,

---

[1] By recommending that this case be remanded for further administrative proceedings, the undersigned does not suggest that Plaintiff is or should be found disabled.

455 (5th Cir. 2000).

But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" if good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

20 C.F.R. § 404.1527(c)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that [the opinion] is not entitled to 'controlling weight.'" *Id.* at 456. Specifically, the ALJ must consider: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R. § 404.1527(c)(2); *see also Newton*, 209 F.3d at 456. The ALJ must consider all six of the Section 404.1527(c)(2) factors if "controlling weight" is not given to a treating physician's medical opinions. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97-CV-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998). In *Newton*, the Fifth Circuit concluded that "an ALJ is

required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456.

But, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

Similar to the facts in *Newton*, as to Plaintiff's mental health, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Newton*, 209 F.3d at 458; *cf. Bullock v. Astrue*, 277 F. App'x 325, 328-29 (5th Cir. 2007) ("After reviewing the opinions of both doctors, the ALJ determined" that the opinion of the state medical examiner, Dr. Faust, "to be more credible in light of the entire record. Because Faust was an examining physician, under *Newton* it was unnecessary for the ALJ to discuss the 20 C.F.R. § 404.1527[(c)](2) factors in choosing to afford more weight to his opinion, rather than the opinion of Dr. Meyer," the treating physician. (citations omitted)).

Here, the ALJ rejected Plaintiff's treating psychiatrist's opinions without an existing controverting treating or examining opinion concerning Plaintiff's mental health. *See* Tr. at 26 (discussing the opinions of Dr. Thiruvengadam and the State agency psychological consultants). Therefore, pursuant to *Newton*, the ALJ was

required to consider each of the Section 404.1527(c) factors prior to rejecting Dr. Thiruvengadam's opinions. *See, e.g., Beasley v. Barnhart*, 191 F. App'x 331, 336 (5th Cir. 2006) ("'[A]bsent reliable medical evidence from a treating or examining physician controverting [the treating psychiatrist's] opinion, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a *detailed analysis* of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[(c)](2).'" (quoting *Newton*, 209 F.3d at 453; original bracket omitted; first emphasis in *Newton*; second emphasis in *Beasley*)).

Instead, before considering Dr. Thiruvengadam's opinions – "several one-page forms," the dates of which the ALJ did not document and which the ALJ "assigned no weight," and opinions from July 2011, June 2012, and October 2012 – the ALJ stated that he "was cognizant of the heightened value our agency places on treating sources that likely have an established relationship with the claimant." Tr. at 26. But such an acknowledgment is not tantamount to a "detailed analysis" of, for example, the physician's length of treatment of the claimant; the physician's frequency of examination; or the nature and extent of the treatment relationship. *Cf. Jones v. Colvin*, 638 F. App'x 300, 304-05 (5th Cir. 2016) (concluding that, there, "the record demonstrates that the ALJ satisfied the *Newton* and *Myers* requirements" as to the first three factors "by recalling the details and diagnoses of numerous appointments between [claimant] and [his treating physician] between March 2011 and January 2012").

Here, the ALJ erred by granting Dr. Thiruvengadam's opinions little to no

weight without an analysis of the Section 404.1527 factors. Dr. Thiruvengadam's opinions included significant mental limitations, which the ALJ even admitted would have rendered Plaintiff disabled if given controlling weight. *See* Tr. at 26 ("In addition, Dr. Thiruvengadam opined in July 2011, June 2012, and October 2012 that the claimant would have mental limitations severe enough that he would be unable to work."). Therefore, the undersigned concludes that the ALJ's failure to consider the Section 404.1527 factors in connection with Dr. Thiruvengadam's opinions was prejudicial error and recommends that this matter be reversed and remanded to the Commissioner for reconsideration of Dr. Thiruvengadam's opinions under all the factors set out in Section 404.1527.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this recommendation.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 2, 2016

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE